BENJAMIN SHREVE v. JAPHET B. JOYCE AND JOHN B. JOYCE, SURVIVING EXECUTORS OF JOSEPH S. JOYCE, DECEASED.

1. A sole executor (and of course if one, all,) has the power, by a new promise, to remove the bar of the statute of limitations.
2. One of two or more executors can bind an estate by the new promise, and it does not thereby make the representatives personally liable.
3. A co-executor can no more be made personally liable by the new promise of another executor, than in any other matter where the validity of the act of the individual executor in binding the estate may be unquestioned. The judgment in either case is *de bonis testatoris*, and there can be no personal liability, except where the executor has made himself chargeable with a *devastavit*.
4. A promise to remove the bar of the statute may be proved against executors in the same way as in other cases, being always sufficiently careful to see that the deduction is properly drawn from the facts.

On case certified from Burlington Circuit Court.

Argued at June Term, 1872, before BEASLEY, Chief Justice, and Justices BEDLE, WOODHULL and SCUDDER.

For the plaintiff, *F. Voorhees.*

For the defendants, *E. Merritt.*

The opinion of the court was delivered by

BEDLE, J.   The chief question for our solution is, whether a promise by one of two or more executors is sufficient to take a debt of the testator out of the statute of limitations.

Very little can be gathered from the English books on this subject, as the whole matter is controlled by the act of 9 *Geo. IV*, c. 14, § 1, known as Lord Tenterden's act, which provides that the promise shall be in writing, and then, that the promise shall only affect the executor making it. Previous to that act, the law had not been sufficiently declared by the English courts to regard it as settled. In *Tullock* v. *Dunn, et al., Executors, Ryan & Moody* 416, Lord Chief Justice

Abbott, (afterwards Lord Tenterden, and the author of the act referred to,) at *nisi prius* in non-suiting the plaintiff, remarked, "that the promise by one only is not enough to entitle the plaintiff to recover; there ought to be a promise by both." Afterwards, in the case of *McCulloch* v. *Dawes et al., Ex'rs*, 9 *D. & R.* 385, the same Chief Justice, sitting in King's Bench, held, under the facts of that case, that there was not sufficient evidence to raise a promise by one executor, but did not question the effect of it upon the other, had it been made. In *Scholey* v. *Walton*, 12 *M. & W.* 509, (after the act of 9 *Geo. IV,*) which was an action by the payee of a note against the defendants as surviving executors, it was decided, on the question of an alleged payment by the deceased executor, (the act referred to, leaving the effect of a payment undisturbed,) that what was claimed as a payment was not made in a representative character; but Baron Parke, in referring to the case of Tullock *v.* Dunn, remarked, that it seemed to him that that case was founded in justice and good sense, and ought to be followed. That, however, was a mere dictum in the cause. Abinger, C. B., seemed differently inclined, so far as it can be gathered from his opinion. Some little other dicta may be found, but the only direct adjudication upon the subject in the English courts is the case of Tullock *v.* Dunn, and that has only the force of a *nisi prius* decision.

The decisions of other states differ very much. The rule in Massachusetts is, that the promise by one executor will avail against them all. *Emerson* v. *Thompson*, 16 *Mass.* 431. In New York, the doctrine appears to be the same, although slightly questioned. *Johnson* v. *Beardslee*, 15 *Johnson* 3; *Hammon* v. *Huntly*, 4 *Cowen* 494; *Cayuga Co. Bk.* v. *Bennett*, 5 *Hill* 236. In Connecticut the rule is otherwise. *Peck* v. *Botsford*, 7 *Conn.* 172. And so also in Pennsylvania. *Fritz* v. *Thomas*, 1 *Whar.* 66; *Reynolds* v. *Hamilton*, 7 *Watts* 420; *Forney* v. *Benedict*, 5 *Barr* 225; *Clark* v. *McGuire's Adm'x*, 11 *Casey* 259.

The discordant condition of the cases in other states will

be seen by reference to the note to *Whitcomb* v. *Whiting*, 1 *Smith's Lead. Cas.* 857.

In New Jersey, the question is one of first impression, and we are at liberty to declare the law as we think most in accordance with principle. The power of a single executor or administrator to remove the bar of the statute by a new promise has been seriously questioned, and in some states denied, but I think the law, as understood in this state, both by the profession and as administered at the circuits, and as sustained by the weight of adjudication elsewhere, is that such power exists. All the cases requiring an express promise are based on that assumption. In the case of *Saltar* v. *Adm'r of Saltar*, 1 *Halst.* 405, the court, after a plea of the statute of limitations to a promise by the intestate in the declaration, gave the plaintiff leave to add a count, stating a promise by the administrator. The opinion of the court was, that " we think the application right, and that it ought to be granted." In *Larason and Hoppuck, Adm'rs*, v. *Lambert, Adm'r*, 7 *Halst.* 247, the indications of the opinion of the court are in the same direction, for it seems to have been assumed that the administrator could have taken the case out of the statute, had the acknowledgment or promise been shown to have been made by him after his appointment as administrator, and been otherwise sufficient. There may be many cases where in plain justice the power should exist. An instance is found in the case of *Stark* v. *Hunton*, 2 *Green's Ch.* 311, on exceptions to a master's report, allowing executors for money paid the Paterson Bank for a debt against the testator, not outlawed at the time of his death, but where the claim was delayed on account of statements by the executors that they were not in funds, but when they were, would pay. The executors did not interpose the statute, but paid the demand. Chancellor Vrcom remarked in his opinion, that all was done in good faith on both sides, and he could not doubt that the payment was properly made, even though out of the proceeds of land devised, which had been ordered to be sold for the payment of debts. He also stated that " it would be hard

equity as against the creditor to say that because he waited at the solicitation and on the promise of the personal representatives, and did not run either the executors or devisees to expense in collecting a *bona fide* debt actually due, he is now to be met by the statute of limitations, and have his debt taken away."

At the common law, the defendant is bound to plead the statute if he would avail himself of it, and the mere failure of an executor to do it by which a recovery is had, does not in itself make the executor liable to a *devastavit*.    2 *Wms. on Ex'rs* 1535.

In Pennsylvania, where an executor may still plead the statute after a new promise, it has been held that he is not bound to plead the statute, because he may know the debt to be a just one, and for that reason the matter is left to his discretion.    *Fritz* v. *Thomas,* 1 *Whar.* 66.    But, as remarked by the editors in the note to *Whitcomb* v. *Whiting,* 1 *Smith's Lead. Cas.* 725, " this seems to be a concession of the whole question, for it is difficult to hold either that such a credit can be claimed for the payment of a debt which is not legally valid, or that the executor can give the debt validity in one way and not in another."

Upon a careful review of this question, it must be taken as law in this state that a sole executor (and of course if one, all,) has the power by a new promise to remove the bar of the statute.    What then will be the effect of a promise by one when there are two or more executors?

The object of the new promise pleaded is not to make the representatives personally liable, but only to reach the estate of the deceased.    A co-executor can no more be made personally liable by the new promise of another executor, than in any other matter where the validity of the act of the individual executor in binding the estate may be unquestioned. The judgment in either case is *de bonis testatoris,* and there could be no personal liability except where the executor has made himself chargeable with a *devastavit.*    The result may follow in all cases of undisputed claims against the estate

where the executor allows himself to be in fault. I see no good reason based on the risk of personal liability, why one executor should not bind the estate by a new promise. Is there any reason then arising out of the relation of the executors to the estate why it should not be done?

The question is not as to the effect of a mere admission by one executor as exclusive proof of an original debt, but of the effect of a new promise to bar the statute, where the original debt is established and forms the consideration of it.

Each executor is a representative of the whole estate. Co-executors are regarded in law as an individual person, and by consequence the acts of any one of them in respect of the administration of the effects are deemed to be the acts of all, for they have all a joint and entire authority over the whole property. 2 *Wms. on Ex'rs* 810, and notes.

Acts done by any one of them, relating either to the delivery, gift, sale, payment, promise or release of the testator's goods, are the acts of all. *Bacon's Abr. Ex'rs & Adm'rs D;* 2 *Starkie's Ev.* 32, note. See also cases in note to 2 *Wms. on Ex'rs* 810.

The release of a debt by one executor is valid so as to bind the rest, provided of course there is no fraud. The ordinary authority of each executor extends to the testator's whole estate to be administered, and the act of one in that respect is the act of all. That is the general rule, but with exceptions where trusts are to be executed in reference to real estate or other special matters requiring the action of all, and also subject to this, that each is not generally personally liable for the other. The one executor is not the agent of the other so as to bind him personally, but each is the entire representative of the estate to bind that.

The very nature of the office in regard to all the ordinary assets to be administered, and in regard to the ascertainment, adjustment and satisfaction of liabilities, and the power over assets is such as to embrace within its scope as well debts barred by the statute, if in justice they should be paid, as those not barred.

Assuming that the authority exists in all of the executors to relieve from the statute, there is no reason in principle why one is not as competent to exercise it as all. It comes within the general scope of his representative duties, and after examining the cases holding the contrary view, I am satisfied that they are based on arbitrary decision, without any solid reason for making the exception. No argument from the danger of fraud by one executor is tenable, for the co-executor can always set up fraud or collusion in the promise, or dispute the original debt, or show payment. Executors can also plead different pleas if necessary. 2 *Wms. on Ex'rs* 1654; *Elwell* v. *Quash*, 1 *Strange* 20.

On these questions, the staleness of the claim would also have its due weight, as well as any other circumstance showing fraud or payment.

An executorship is a matter of personal trust by the testator, and there is always some hazard to be run, yet a co-executor can, if so disposed, protect the estate from fraud and imposition. Besides, the courts, on settlement of executors' accounts, where the power of the office has been abused, could make an executor personally account. The result is that one of two or more executors can bind the estate by a new promise.

The remaining question is, whether the character of the promise in this case is sufficient. The testator died in March, 1863. The defendants are his surviving executors. He made his promissory note March 26th, 1858, for $650, payable to the plaintiff or order, ninety days after date. Several credits were endorsed in the lifetime of the testator, but at his death a considerable part of it was yet due. The substance of the evidence before us is, that in the presence of a witness Shreve had a talk with the executor, Japhet, twice about the note; that the first was in the spring of 1865, when Shreve asked Japhet about the money, and Japhet said they had not yet settled up the estate; that the second talk was in the following spring, when Shreve again asked him about the money for the payment of the note, and Japhet said they had about settled up the estate, or that he was about to settle up the

estate, and would pay him soon. The application of the conversation to the note is quite evident, and the promise to pay is *express*. The suit was commenced (as appeared on the argument,) in July, 1869, over three years after the promise. A reasonable time had much more than elapsed to give the promise full effect. That part of the remark that they had about settled up the estate, or that he was about to settle up the estate, does not qualify the promise so as to make it conditioned upon the settlement. That is not the fair construction. Whether a promise can be implied against an executor has given rise to much diversity of opinion, but however that may be, the promise in question is express, and therefore free from difficulty. No intimation is intended against the right to imply a promise against an executor under some circumstances the same as against any one else, for it is difficult to understand why the promise may not be proved against executors in the same way as in other cases, being always sufficiently careful to see that the deduction is properly drawn from the facts.

The Circuit Court should be advised in answer to the question propounded, that the evidence was sufficient to warrant a verdict for the plaintiff.

CITED in *Mutual Life Ins. Co.* v. *Sturges*, 6 *Stew. Eq.* 328; *Everitt* v. *Williams*, 16 *Vr.* 140.